UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMY ROWE,

                                    Plaintiff,

v.                                                                          8:15-cv-00652
                                                                            (TWD)

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OFFICE OF MARK A. SCHNEIDER                  MARK A. SCHNEIDER, ESQ.
Counsel for Plaintiff
57 Court Street
Plattsburgh, New York 12901

HON. RICHARD S. HARTUNIAN                    JOSHUA L. KERSHNER, ESQ.
United States Attorney for the              Special Assistant United States Attorney
Northern District of New York
Counsel for Defendant
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                    STEPHEN P. CONTE, ESQ.
Social Security Administration              Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**DECISION AND ORDER**</u>

        Plaintiff Amy Rowe brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security ("Commissioner") denying her

Title II application for disability insurance benefits.  (Dkt. No. 1.)  This case has proceeded in

accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. (Dkt. Nos. 13 and 22.) Oral argument was not heard. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States Magistrate Judge. (Dkt. No. 17.) For the reasons discussed below, the Commissioner's decision is affirmed.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is thirty-seven years old, with a birth date of April 5, 1979. (Administrative Transcript at 36.[1]) Plaintiff is a high school graduate and completed sixty credit hours at Clinton Community College ("CCC"). (T. at 39, 229.) Plaintiff testified she would graduate from CCC in December 2013 with an Associate's Degree in Human Services. (T. at 39.) She is divorced and has four children. (T. at 39.) From 2007 to 2010, Plaintiff worked as a critical care technician in a hospital. (T. at 230.) She has also worked as an apple picker, cashier, counselor, horseback riding instructor, and package handler. *Id.*

Plaintiff alleges disability due to mental health, depression, anxiety, alcohol abuse, and obesity. (T. at 229.) Plaintiff's medical records reveal she has undergone treatment at Clinton County Mental Health and Addiction Services ("CCMH") since 2010, and has regularly treated with psychiatrist Bruce Kokernot, M.D., since December 2011. (T. at 432-47, 486-95, 529-49.) Plaintiff's depression and anxiety have been treated with various medications, including Depakote, Seroquel, Wellbutrin, Celexa, and Gabapentin. (T. at 43.) In 2011, Plaintiff

---

[1]  The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system. All other page references identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.

voluntarily attended inpatient rehabilitation at McPike Addiction Treatment Center ("McPike").

(T. at 498-500.)  She reports no relapses with alcohol since June 2011.  (T. at 43.)

On February 28, 2011, Plaintiff protectively filed an application for disability insurance

benefits alleging disability as of March 17, 2010.  (T. at 212-20.)  Plaintiff's claim was initially

denied on May 18, 2011, and she filed a written request for a hearing on May 25, 2011.  (T. at

123-29.)  A video hearing was held on May 24, 2012, before Administrative Law Judge ("ALJ")

Dale Black-Pennington.  (T. at 75-100.)  Plaintiff was represented by counsel at the hearing.  *Id*.

On May 24, 2012, the ALJ issued a decision finding Plaintiff was not disabled.  (T. at 105-14.)

Thereafter, Plaintiff filed a timely request for review.  (T. at 303.)  On July 18, 2013, the Appeals

Council vacated the April 18, 2014, decision and remanded the case.[2]  (T. at 120-21.)

On December 10, 2013, ALJ Black-Pennington conducted the video remand hearing

from Albany, New York.  (T. at 30-100.)  Plaintiff, represented by counsel, appeared and

testified in Plattsburgh, New York.  *Id*.  In addition, medical expert Chukwuemeka Efobi, M.D.,

and vocational expert ("VE") Cherie Plante, MS, CRC, testified at the hearing by telephone.  *Id*.

(T. at 48-73, 202-203, 204.)

On April 14, 2014, the ALJ issued a decision finding Plaintiff is under a disability, as

defined in the Social Security Act, but found that substance use disorder is a contributing factor

material to the determination of disability because Plaintiff would be able to perform past

relevant work if she stopped using alcohol.  (T. at 18-23.)  Accordingly, the ALJ found Plaintiff

has not been disabled from March 17, 2010, through the date of the decision.  (T. at 23.)  The

ALJ's decision became the final decision of the Commissioner when the Appeals Council denied

---

[2]  On remand, if Plaintiff was found disabled, the Appeals Council directed the ALJ to consider
SSR 13-2p, 2013 WL 621536, at *4 (S.S.A. Feb. 20, 2013), and "determine whether alcoholism
is a contributing factor material to the finding of disability."  (T. at 121.)

Plaintiff's request for review on May 20, 2015.  (T. at 4-5.)  Plaintiff timely commenced this

action on May 28, 2015.  (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits must establish

that he or she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. §§ 423(d)(1)(A) (2015).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 423(d)(2)(A).

Acting pursuant to its statutory rulemaking authority, 42 U.S.C. § 405(a), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 404.1520(a)(4) (2016).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the

> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v.*

*Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.

1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the

defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of

working.  *Id.*

However, the Social Security Act, as amended in 1996, provides that "[a]n individual

shall not be considered . . . disabled . . . if alcoholism or drug addiction would . . . be a

contributing factor material to the Commissioner's determination that the individual is disabled."

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (citing 42 U.S.C. § 1382c

(a)(3)(J)).  Thus, "[w]hen there is medical evidence of an applicant's drug or alcohol abuse, the

'disability' inquiry does not end with the five-step analysis."  *Cage v. Comm'r of Soc. Sec.*, 692

F.3d 118, 123 (2d Cir. 2012) (citing 20 C.F.R. § 416.935(a)); 20 C.F.R. § 404.1535(a); *see also*

SSR 13-2p, 2013 WL 621536, at *4.  In such cases, a secondary analysis must be conducted to

determine whether the claimant's drug addiction or alcoholism is material to the initial finding of

disability.  *See* 20 C.F.R. § 404.1535(a).

A "key factor" under the secondary analysis is whether the claimant would still be found

disabled if they stopped using drugs or alcohol.  *Id.* § 404.1535(b)(1).  In making this

determination, the administrative adjudicators first determine whether physical and mental

limitations would remain if the claimant stopped using drugs or alcohol, and if so, whether those

remaining limitations are disabling on their own. *Id*. § 404.1535(b)(2). If so, claimants are considered disabled within the meaning of the Social Security Act notwithstanding their drug addiction or alcoholism. *Id*. § 404.1535(b)(2)(ii). If not, their drug addiction or alcoholism is considered material, and the claimant is not eligible for benefits. *Id*. § 404.1535(b)(2)(i).

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). If there is substantial evidence of record both for and against the Commissioner's decision, the court must uphold the decision absent legal error. *See DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998).

## III.    THE ALJ'S DECISION

The ALJ determined Plaintiff met the insured status requirements through June 30, 2011. (T. at 16.) The ALJ determined Plaintiff's work after her alleged onset date of disability as a camp director from June through August 2013 did rise to the level of substantial gainful activity.[3] (T. at 16-17.) The ALJ determined Plaintiff had the following severe impairments: bipolar disorder, depression, anxiety disorder, and alcohol dependence currently in remission. (T. at 17.) Plaintiff's obesity was found to be a non-severe impairment. (T. at 17-18.) The ALJ found Plaintiff did have an impairment, considered singly and in combination, that met or medically equaled the criteria of listings 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders) at 20 C.F.R. Pt. 404, Subpt P, App 1. (T. at 18-19.) Because the ALJ found the severity of Plaintiff's impairments was affected by substance use, the ALJ needed to

---

[3] At the December 10, 2013, hearing, Plaintiff amended her application to a closed period ending June 20, 2013. (T. at 33.)

determine whether Plaintiff's disability would persist if Plaintiff stopped her substance use. (T. at 19.)

Under this secondary analysis, the ALJ found if Plaintiff stopped using alcohol she would still have a severe impairment or combination of impairments. *Id.* If Plaintiff's substance use was stopped, however, the ALJ determined Plaintiff would not have an impairment, singly or in combination, that medically met or equaled the criteria of the listings, including listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders). (T. at 19-20.)

Next, the ALJ determined if Plaintiff stopped the substance use she had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is able understand and follow simple instructions and directions; she can complete simple, repetitive tasks, and some complex tasks; she is able to work in a group setting of up to ten coworkers; she can have superficial and transactional contact with coworkers and the general public." (T. at 20.)

Considering Plaintiff's age, education, work experience, and RFC, and relying upon the testimony of the VE, the ALJ concluded that if Plaintiff stopped using alcohol she could perform her past work as a nurse assistant as it is generally performed in the national economy. (T. at 22-23.)

Thus, the ALJ found Plaintiff's substance use was a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped her substance use. (T. at 23.) Because Plaintiff's substance use disorder was a contributing factor material to the determination of disability, the ALJ found Plaintiff has not been disabled within the meaning of the Social Security Act at any time from March 17, 2010, through the date of the decision. (T. at 23-24.)

## IV.	THE PARTIES' CONTENTIONS

Plaintiff argues the ALJ erred in (1) finding Plaintiff's substance use was material to the determination of disability; (2) giving more weight to the opinion of the medical expert, Dr. Efobi, than to Plaintiff's treating psychiatrist, Dr. Kokernot; (3) finding Plaintiff's obesity to be a non-severe impairment; and (4) not finding Plaintiff disabled based upon her credible testimony. (Dkt. No. 13 at 18-31.)  The Commissioner argues the ALJ's decision is supported by substantial evidence and is based upon the application of correct legal standards.  (Dkt. No. 22 at 8-19.)  In reply, which was permitted by this Court (*see* Dkt. No. 24), Plaintiff argues the ALJ erred by not giving controlling weight to Dr. Kokernot's opinion that Plaintiff's mental health impairments would still exist if Plaintiff stopped using alcohol.  (Dkt. No. 25 at 1-4.)

## V.	DISCUSSION

### A.	Severity Determination

Plaintiff argues the ALJ erred by finding her obesity to be a non-severe impairment. (Dkt. No. 13 at 26-29.)  Specifically, Plaintiff argues the ALJ erroneously determined Plaintiff's extreme obesity did not cause her any physical limitations and failed to consider her obesity in combination with her mental illness.  (Dkt. No. 13 at 26-29.)  The Commissioner argues the ALJ's severity determination is supported by substantial evidence.  (Dkt. No. 22 at 17-18.)  The Commissioner is correct.

At step two, the ALJ must determine whether the claimant has a severe impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that significantly limits the claimant's physical and/or mental ability to do basic work activities.  *Id.* § 404.1520(c).  "Basic work

activities" are defined as "the abilities and aptitudes necessary to do most jobs." *Id*. §

404.1521(b). These include walking, standing, sitting, lifting, pushing, pulling, reaching,

carrying, handling, seeing, hearing, speaking, understanding, carrying out instructions,

remembering simple instructions, use of judgment, responding appropriately to supervision, co-

workers and usual work situations, and dealing with changes in a routine work setting. *Id*.

While the Second Circuit has held that the severity regulation is "valid only if applied to

screen out *de minimis* claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), "the 'mere

presence of a disease or impairment, or establishing that a person has been diagnosed or treated

for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor v.

Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012); *Prince v. Astrue*, 490 F. App'x 399, 400 (2d

Cir. 2013) (a mere diagnosis, without evidence of severity of symptoms and functional

limitations, does not mandate a finding of disability); *Payne v. Astrue*, No. 11-cv-322 (RFT),

2013 WL 550677, at *5 (N.D.N.Y. Feb. 12, 2013) ("The mere existence of a diagnosis, however,

is insufficient to show that functional limitations are imposed as a result of the impairments.").

The claimant bears the burden of presenting evidence establishing severity. 20 C.F.R. §

404.1512(c). Thus, the claimant must demonstrate "that the impairment has caused functional

limitations that precluded him from engaging in any substantial gainful activity for one year or

more." *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y. 2012) (citing *Rivera v. Harris*, 623

F.2d 212, 215 (2d Cir. 1980)). An impairment is non-severe if the medical evidence establishes

only a slight abnormality which would have no more than a minimal effect on an individual's

ability to work. *Id*. at 271.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them

severe, an error in the severity analysis at step two may be harmless because the ALJ continued

with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10–CV-1244 (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523; *Dixon*, 54 F.3d at 1031.

Undeniably, Plaintiff's medical records confirm a history of obesity. (T. at 459, 462, 493, 534, 538, 540, 542.) However, "[o]besity is not in and of itself a disability[.]" *Cruz v. Barnhart*, No. 04 CIV 9011 (GWG), 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006) (citing SSR 02-1p, 2000 WL 628049 (SSA Sept. 12, 2002)).

In this case, Plaintiff's medical records fail to establish any work-related limitations associated with her obesity. On March 31, 2010, Plaintiff was admitted to Champlain Valley Physicians Hospital Medical Center ("CVPH") after reporting she was "having trouble" with her medication. (T. at 453.) The admission form indicates Plaintiff is 5'4" and weighs 109 kg (approximately 240 pounds), with a body mass index of 41.2. (T. at 456.) Upon physical examination, Plaintiff had an erect posture, with symmetrical stride and arm swing. (T. at 457.) She was able to "toe heal and tandem walk." *Id*.

On March 15, 2011, Plaintiff recorded her height at 5'6" and her weight at 278 pounds. (T. at 229.) In her Adult Function Report, Plaintiff reported that her obesity causes shortness of breath while walking and climbing stairs. (T. at 259-60.) However, she reported no restrictions in her ability to lift, stand, sit, kneel, squat, reach, or use her hands. *Id*. She does not require any assistive devices while ambulating. (T. at 261.) Plaintiff reported doing her own cooking,

cleaning, laundry, and shopping. (T. at 255-56.) She drives a car, and goes outside on a daily basis. (T. at 258.) She enjoys spending time with her children, including flying kites at the park. (T. at 39.) Plaintiff regularly attends counseling, group therapy, and psychiatric appointments. (T. at 259.) She takes care of household animals. (T. at 256.) Her apartment is located on the second floor of a two story building. (T. at 37.)

An examination performed as part of Plaintiff's admission to McPike on June 22, 2011, showed "no significant findings" on physical examination, and Plaintiff's overall physical health was considered "good." (T. at 498-500.) Plaintiff was "cleared for all activities." (T. at 500.) During an assessment three days later, Plaintiff stated she loves walking and spending time with her dog. (T. at 503.) She also enjoys reading, sewing, and crafting. *Id.* Plaintiff reported her physical condition does not limit or impact her leisure activities. *Id.*

On September 26, 2012, Plaintiff reported to Dr. Kokernot she was exercising and eating well, but not losing weight. (T. at 542.) She was interning eighteen to twenty hours per week at the Department of Social Services ("DSS"). *Id.* At the December 10, 2013 hearing, Plaintiff reported weighing 250 pounds. (T. at 36.) She also testified her weight affects her mood and contributes to her depression. (T. at 95.)

As discussed above, the mere presence of a disease or impairment alone is insufficient to establish disability; instead, it is the impact of the condition, and in particular any limitations which it may impose upon the ability to perform basic work functions, that is pivotal to the disability inquiry. *See Rivera v. Harris*, 623 F.2d 212, 215-16 (2d Cir.1980); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995); *Hamilton v. Astrue*, No. 12-CV-6291P, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013). Here, the ALJ found Plaintiff's obesity does not cause any significant work-related limitation of function, and thus her obesity is a non-severe

impairment. (T. at 17-18.) The ALJ's severity determination is supported by substantial evidence, and it is not erroneous notwithstanding her diagnosed obesity.

**B.     Materiality of Substance Use**

Plaintiff argues the ALJ erred in finding Plaintiff's substance use was material to the determination of disability. (Dkt. No. 13 at 18-22, 29-31.) Specifically, Plaintiff argues she was disabled by her mental illness until June 30, 2013, when she was able to return to work. (Dkt. No. 22 at 18-22.) The Commissioner argues the ALJ's determination is supported by substantial evidence. (Dkt. No. 22 at 8-12.) The Commissioner is correct.

Where, as here, the ALJ finds the claimant is disabled utilizing the five-step sequential evaluation and there is medical evidence of the claimant's drug addiction or alcoholism, the ALJ must then determine "whether [the ALJ] would still find [the claimant] disabled if [she] stopped using drugs or alcohol." *DiBenedetto v. Colvin*, No. 5:12-CV-1528 (GLS), 2014 WL 1154093, at *2 (N.D.N.Y. Mar. 21, 2014) (quoting 20 C.F.R. § 404.1535(a), (b)(1)). In making this determination, the ALJ must evaluate which of the claimant's limitations would remain if she stopped using drugs or alcohol, and then determine whether any or all of the remaining limitations would be disabling. *See* 20 C.F.R. § 404.1535(b)(2). If the ALJ determines the claimant's remaining limitations would not be disabling, then the ALJ must find the substance use is a contributing factor material to the determination of disability and the claimant cannot be found disabled under the Act. *Id*. § 404.1535(b)(2)(i). The plaintiff bears the burden of proof to show her drug addiction or alcoholism is not material to her disability. *See Cage*, 692 F.3d at 123-25; *Milks v. Colvin*, No. 3:13-CV-1571 (GTS), 2015 WL 58382, at *4 (N.D.N.Y. Jan. 5, 2015).

As set forth above, the ALJ determined Plaintiff's impairments, including the substance use disorder, met listings 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders) as of the date last insured. (T. at 18-19.) To satisfy the requirements of listing 12.04, a claimant must demonstrate continuous or intermittent symptoms listed in Section A and at least two of the following in Section B: marked restriction in activities of daily living; marked difficulties in social functioning; marked difficulties in maintaining concentration, persistence, and pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A)-(B) (2016) ("App. 1"). Alternatively, a claimant must show a medically documented chronic affective disorder of at least two years' duration, with at least one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living environment. App. 1 § 12.04(C).

Here, the ALJ determined the paragraph A criteria was satisfied because Plaintiff "had bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes." (T. at 187.) The ALJ next determined the paragraph B criteria was satisfied because Plaintiff suffered (1) marked difficulties in social functioning; (2) marked difficulties in concentration, persistence, or pace; and (3) had experienced three episodes of decompensation. (T. at 18.) Thus, the ALJ determined Plaintiff met listings 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders). *Id.*

However, in the absence of Plaintiff's substance use, the ALJ determined Plaintiff would only suffer moderate difficulties in those areas and would experience no episodes of decompensation. (T. at 19-20.)

First, the ALJ found Plaintiff would have moderate difficulties in social functioning if the substance use was stopped. (T. at 19.) Plaintiff testified she still experienced some anxiety and depression, especially when in large groups of people. (T. at 46.) Plaintiff testified she completed a majority of college credits online because of her depression and anxiety. *Id.* However, from June through August 2013, while abstaining from alcohol, Plaintiff was able to engage in substantial gainful activity as a camp director, which involved supervising 20 to 30 employees and up to 70 children. (T. at 33, 41, 536.) Plaintiff testified she works eighteen hours per week for the reception desk at DSS as part of her college internship. (T. at 37-38.) Plaintiff does not receive any special accommodations during her internship, although she testified her co-workers are aware of her health issues and "[t]hey are very good" and "intervene" if she needs a break or is "a little off" on a given day. (T. at 45.)

Next, the ALJ determined with regard to concentration, persistence or pace, Plaintiff would have moderate difficulties if the substance use was stopped. (T. at 20.) Plaintiff testified she continues to have some problems with focus and concentration, even while abstaining from alcohol. (T. at 44-45.) The ALJ found this testimony credible. (T. at 20.) At the December 10, 2013 hearing, Plaintiff testified her symptoms had improved since the 2012 hearing. (T. at 43-47.) She was experiencing less anxiety and no manic episodes with counseling and medication. (T. at 47.) In terms of her functioning, Plaintiff stated her "clean time" had "made quite a difference" in her anxiety and depression, but indicated she still experiences some anxiety and depression. (T. at 44-45.) Although her focus and concentration "seems better," Plaintiff

15

testified she still experiences some problems, depending on the day. (T. at 46.) She testified her memory is better. (T. at 47.)

As for episodes of decompensation, Plaintiff testified she has had no psychiatric hospitalizations or episodes of decompensation since completing her inpatient treatment at McPike in 2011. (T. at 47.) Thus, the ALJ found Plaintiff would experience no episodes of decompensation if the substance use was stopped. (T. at 20.)

The ALJ also considered whether the paragraph C criteria would be satisfied if Plaintiff stopped the substance use. (T. at 20.) The ALJ correctly found the record does not contain evidence Plaintiff has the type of repeated episodes of decompensation or residual disease contemplated by "paragraph C" of listing 12.04. *Id.* In addition, the ALJ correctly found the record does not indicate Plaintiff has required the type of highly supportive living environment contemplated by part 3 of "paragraph C," or the continued need for such an environment. *Id.* Regarding listing 12.06, the ALJ correctly found the record did not indicate Plaintiff has an inability to function independently outside of the area of her own home. *Id.*

The medical evidence also supports a finding that Plaintiff's functioning improved since Plaintiff abstained from alcohol, including periods of "brief sobriety." The Second Circuit has held that a comparison of medical opinions during a period when a claimant was using alcohol to "periods of sobriety," even brief ones such as during hospitalization, constitutes substantial evidence to support a determination that a claimant would not be disabled were she to stop using drugs or alcohol. *See Cage*, 692 F.3d at 127 (favorable mental health evaluations conducted during inpatient programs, when the claimant had no access to drugs or alcohol, satisfied the substantial evidence standard); *see e.g.*, *DiBenedetto*, 2014 WL 1154093, at *3 (materiality determination supported by substantial evidence where, *inter alia*, the ALJ relied upon a positive

evaluation of the plaintiff during a hospital stay where plaintiff had no access to alcohol or illegal drugs).

In this case, Plaintiff was hospitalized three times during the relevant period in which she had brief "periods of sobriety." (T. at 351, 453-58, 461.) On March 31, 2010, Plaintiff was admitted to CVPH after self-reporting problems with her medication and having suicidal thoughts. (T. at 453-58.) She was discharged on April 9, 2010, in "stable" and "improved" condition. (T. at 459-60.) She was no longer suicidal or homicidal. (T. at 460.) She denied auditory or visual hallucinations. *Id*. She was described as calm and cooperative. *Id*. Plaintiff expressed hope for the future. *Id*. She hoped to improve her issues and work on her marriage. *Id*. Her medication included Depakote, Seroquel, and Ambien. *Id*. She was instructed to follow up with CCMH for medication management and counseling. *Id*.

Plaintiff was admitted to Ellis Hospital on October 15, 2010, for "increasing depression and suicidal ideation with plan to overdose on her pills." (T. at 351.) She was discharged eight days later in "improved" condition:

> Her mental status at discharge is "alert." She is oriented x3. Her affect is increasingly broad. She made better eye contact throughout the hospitalization. Her speech was clear and less child-like in nature. Her thinking was clear and organized. She is clearly more hopeful. She was more coherent and making plans for the future. There was no overt psychosis. There was an element of having bizarre dreams, which she had difficulty discerning from reality, but though stabilized at the time of discharge. She denied suicidal or homicidal ideation and felt safe and stable for discharge.

(T. at 351-52.)

On May 11, 2011, Plaintiff was admitted to CVPH after taking more than fifteen pills of Seroquel (200mg) in the span of ten to twelve hours. (T. at 461.) She was discharged May 16, 2011, in "improved" condition. (T. at 464-65.) During her five day stay at CVPH, Plaintiff

continued to take her medications. (T. at 465.) She stated that she felt better, and that she "understood" her situation. *Id*. Plaintiff reported she would work with services "to get a job" and to "continue her rehab program." *Id*. Upon mental examination, Plaintiff was pleasant, cooperative, maintained good eye contact, and had no abnormal movement. *Id*. She denied suicidal or homicidal ideations. *Id*. She denied delusions. *Id*. She denied auditory or visual hallucinations. *Id*. Her mood was fine and her affect was full. *Id*. She was orientated times three. *Id*. Her memory in one and five minutes was 3/3. *Id*. Her concentration with serial 7s was 5/5. *Id*. Plaintiff's general knowledge was fair; judgment and insight were fair. *Id*.

On June 22, 2011, Plaintiff was admitted to McPike for voluntary inpatient rehabilitation. (T. at 498.) She was discharged on July 28, 2011. (T. at 521.) At the time of discharge, Plaintiff was "considered to be psychiatrically stable, in good spirits, thankful to staff and other patients, and in good physical health." *Id*.

Plaintiff's medical records also show improvement while abstaining from alcohol. In December 2011, Plaintiff returned to outpatient treatment at CCMH. (T. at 523.) During an evaluation on December 30, 2011, Dr. Kokernot found Plaintiff's mood was "much improved," and noted Plaintiff "seems to have benefited from rehab and halfway house." (T. at 493.) Dr. Kokernot commented on March 16, 2012, Plaintiff's "level of anxiety seems much less. Insight and judgment seem improved." (T. at 495.)

In a letter dated April 19, 2012, Plaintiff's addictions counselor at CCMH, Sara Marlow, MS, NCC, CASAC, noted Plaintiff was making continued progress with her recovery and abstinence. (T. at 523.) Plaintiff was in compliance with her treatment program. *Id*.

By June 2012, Dr. Kokernot's records indicate "Social Services has put [Plaintiff] to work at the dollar store." (T. at 544.) Although Plaintiff found the work "demeaning," she was

able to "see the positives in that it gets her out of the house and gets her among people, which is a healthier thing than sitting around and ruminating about her problems." *Id.* In June 2012, Plaintiff only significant complaints were related to her divorce and custody issues regarding her children. (T. at 538-44.) In September 2012, Plaintiff started interning at DSS for approximately eighteen hours per week. (T. at 542.) She also reported having been in contact with her biological father, whom she had not seen in twenty years. *Id.*

On December 19, 2012, Plaintiff reported that "things are going better for her." (T. at 541.) She was taking on more responsibilities at DSS. *Id.* She reported passing all of her classes at CCC. *Id.* Plaintiff felt she was ready to engage in more competitive employment. *Id.* Plaintiff reported still having mood swings, but overall she felt she was handling those in a healthier way. *Id.* Dr. Kokernot noted Plaintiff's mood was improved and her affect was appropriate. *Id.* He indicated Plaintiff was "heading in the right direction." *Id.*

On January 28, 2013, Plaintiff was successfully discharged from addiction treatment at CCMH. (T. at 531.) The record reveals Plaintiff attended a total of 81 treatment programs, consisting of 57 group treatment sessions and 24 individual sessions. *Id.* According to the discharge summary, Plaintiff was able to obtain an apartment. *Id.* She participated in a work experience program and re-enrolled in community college. *Id.* She developed healthy and supportive relationships with family she had not been in contact with for several years, and was able to obtain unsupervised visitations with her two oldest children.[4] *Id.* Plaintiff maintained her sobriety throughout treatment. *Id.* At discharge, Plaintiff expressed pride in her achievement and planned to continue mental health treatment at CCMH for additional support. *Id.*

---

[4] Plaintiff testified that her twelve year old daughter lived with her as of October, 2013. (T. at 36.)

On March 22, 2013, Dr. Kokernot noted Plaintiff continued to make progress. (T. at 540.) Her speech was fluent and her mood was euthymic. *Id*. She reported no side effects from her medications. *Id*. Plaintiff reported sleeping better. *Id*. She felt like she was "moving in the right direction." *Id*.

In light of the above, the ALJ determined if Plaintiff stopped her substance use, she would no longer qualify as *per se* disabled under the Listings. (T. at 19.) Accordingly, the ALJ proceeded to steps four and five of the sequential evaluation analysis. *See* 20 C.F.R. § 404.1535(b)(2).

The ALJ determined if Plaintiff stopped the substance use, she would have the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: she is able to understand and follow simple instructions and directions; she can complete simple, repetitive tasks and some complex tasks; she is able to work in a group setting of up to 10 coworkers; she can superficial and transactional contact with coworkers and the general public." (T. at 20.)

As set forth above, Plaintiff reported working from 2007 through 2010 as a hospital "critical care technician." At the December 10, 2013 hearing, the VE testified that Plaintiff's job as a critical care technician would be appropriately categorized under the *Dictionary of Occupational Titles* as two different occupations, a medical assistant (DOT 079.369-010), which had a specific vocational preparation ("SVP") of six, or nurse assistant (DOT 355.674-014), which had an SVP of four. (T. at 23.) Relying upon the VE's testimony, the ALJ found Plaintiff's impairments in the absence of substance use would allow her to perform past relevant work as a nurse assistant. (T. at 22.) Thus, the ALJ determined the substance use disorder is a

contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped the substance use. (T. at 23.)

For these reasons, the ALJ found Plaintiff's substance use was a contributing factor material to the determination of disability, and as such, denied benefits. (T. at 23.) The Court finds the ALJ's materiality decision is supported by the substantial evidence outlined above.

### C.     TREATING PHYSCIAN RULE

Plaintiff argues the ALJ erred by giving more weight to the "unsupported" opinions of Dr. Efobi than to the "well-supported" opinions of Dr. Kokernot in contravention of the treating physician rule and its caveats. (Dkt. No. 13 at 22-26.) In response, the Commissioner argues the ALJ properly assigned weight to the opinion evidence in the record. (Dkt. No. 22 at 12-17.) The Commissioner is correct.

It is well established that a treating physician's opinion as to the nature and severity of an impairment is given controlling weight. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam). However, a treating physician's opinion is not entitled to controlling weight when it is not supported by medically acceptable, clinical, and laboratory diagnostic techniques or is inconsistent with other evidence in the record. *Id*. Significantly, an opinion from a treating source that the claimant is disabled cannot itself be determinative. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

The following factors must be considered by the ALJ when deciding how much weight the treating source's opinion should receive, even if the treating source is not given controlling

21

weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. *Id*. § 404.1527(c)(2). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell*, 177 F.3d at 134). Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell*, 177 F.3d at 133; *Halloran*, 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504. Further, it is proper for an ALJ to reject those portions of a medical opinion which are not supported by and even contrary to, the objective evidence of record, while accepting those portions that are supported by the record. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d. Cir. 2002).

In this case, the ALJ gave great weight to the opinion of Dr. Efobi, as it was supported by the record during the period when Plaintiff abstained from alcohol use. (T. at 22.) The ALJ gave significant weight to the opinion of Dr. Kokernot, as the record showed Plaintiff was unable to work when engaging in substance use; however, Dr. Kokernot's records showed consistent improvement in Plaintiff's symptoms since she stopped abusing alcohol in June 2011. *Id*.

In a medical source statement dated April 18, 2012, Dr. Kokernot opined Plaintiff was "unable to engage in competitive employment." (T. at 528.) As the ALJ correctly noted, "[a]lthough provided with a list of mental and functional limitations, Dr. Kokernot did not specify in what specific areas [Plaintiff] had deficits and to what degree; however, Dr. Kokernot

did indicate that [Plaintiff's] inability to work was based on 'persistent [mental health] and substance abuse problems.'"  (T. at 22.)  Dr. Kokernot also "checked a box" that Plaintiff's "impairment" would be expected to continue if use of alcohol use were to cease.  (T. at 528.)

Plaintiff argues the ALJ erred by "not giving great weight to Dr. Kokernot's medical opinion that her impairment would be expected to continue if substance abuse were to cease." (Dkt. No 25 at 3.)  Plaintiff further argues the ALJ should have recontacted Dr. Kokernot for clarification if the bases for his opinion were not clear.  *Id*.

As an initial matter, Plaintiff concedes Dr. Kokernot's opinion that Plaintiff was unable to work is a legal determination reserved solely to the Commissioner, and therefore, the statements were not entitled to any weight.  (Dkt. No. 25 at 2-3.)  Nonetheless, because the ALJ concluded Plaintiff was disabled and unable to work during the period in which she was abusing alcohol, the ALJ credited Dr. Kokernot's opinion significant weight.  (T. at 22.)

Here, the Court finds Plaintiff's argument the ALJ erred by giving "more weight to the unsupported opinion of [her] consultant than to the well-supported opinions of the treating psychiatrist" to be without merit.  (Dkt. No. 13 at 22.)  As the ALJ discussed at length, and as supported by Dr. Kokernot's treatment notes, Plaintiff's mental health showed consistent improvement when she stopped using alcohol, and with continued medication and treatment.

The mere fact that Dr. Kokernot "checked a box" indicating Plaintiff's mental health impairments would be expected to continue if Plaintiff no longer used alcohol, does not mean Plaintiff was disabled under the Act.  (*See* T. at 528.)  As the record clearly shows, with continued treatment came continued improvement.  Here, the ALJ thoroughly discussed Plaintiff's medical records from the time she reported abstaining from alcohol through the date she commenced working full-time in June 2013.  (T. at 19-22.)

Plaintiff's argument the ALJ should have recontacted Dr. Kokernot to clarify his opinions set forth in the April 2012, medical source statement is also without merit. (Dkt. No. 13 at 26.) When the available evidence in the record is adequate to make a disability determination and there are no obvious gaps or evidentiary deficiencies, the ALJ has no duty to obtain more information from a claimant's treating physician if he finds her assessments "unclear." *See Rosa*, 168 F.3d at 79 (noting the ALJ has an affirmative duty to seek additional information only when there are obvious gaps in the administrative record and when the ALJ does not possess a "complete medical history" (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996))).

The ALJ had Plaintiff's complete medical records, including all of Dr. Kokernot's treatment notes. The ALJ fully considered and reviewed the complete administrative record, which included treatment notes, psychiatric visits, therapy records, opinions from a consultative examiner, a State agency consultant, a non-examining medical expert, and testimonial evidence from Plaintiff. As such, there were no obvious gaps or deficiencies in the record such that the ALJ had a duty to recontact Dr. Kokernot for clarification of his opinions.

In light of the above, the ALJ's assignment of weight to the opinion evidence in the record is supported by substantial evidence.

## VI.    CONCLUSION

After carefully reviewing the entire record and for the reasons stated, the Commissioner's denial of benefits applied the correct legal standards and was based upon substantial evidence. 20 C.F.R. §§ 404.1520(g). Because the ALJ's materiality of substance use determination is affirmed, Plaintiff's application for benefits must be denied under the Act. *See* 42 U.S.C. § 423(d)(2)(C).

**WHEREFORE**, it is hereby

**ORDERED** that the Commissioner's decision is affirmed and Defendant's motion for

judgment on the pleadings (Dkt. No. 22) is **GRANTED** and the complaint (Dkt. No. 1) is

**DISMISSED**.

Dated: September 29, 2016
      Syracuse, New York

Thérèse Wiley Dancks<br>
United States Magistrate Judge